51 A.3d 641

Gregory MARSHALL

v.

STATE of Maryland.

No. 103, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 24, 2012.

Tamara D. Sanders, Asst. Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

ADKINS, J.

In this case, we return to the question of when "meaningful trial proceedings" begin for purposes of Maryland Rule 4–215(e), regarding a defendant's request to discharge counsel. Petitioner Gregory Marshall was approaching trial in the Circuit Court for Allegany County on charges stemming from a prison incident. On the morning before trial, several preliminary matters were considered. Upon their conclusion, the venire panel was summoned to the courtroom so that voir dire could begin.

The trial judge began to address the venire panel, but was interrupted almost immediately by Petitioner saying, "Your honor, I'd like to represent myself." The judge deferred consideration of this request until after roll call of the jury was taken, at which point he excused the venire panel and heard Petitioner's request to discharge counsel. The trial judge, applying Maryland Rule 4–215(e), ultimately allowed Petitioner to discharge counsel and proceed pro se.

After being tried and convicted, Petitioner appealed to the Court of Special Appeals, arguing that the judge did not follow Rule 4–215(e)'s mandatory procedures for a discharge of counsel. The Court of Special Appeals affirmed, holding that Rule 4–215(e) did not apply because meaningful trial proceedings had begun when Petitioner made his request. Thus, the Court of Special Appeals reviewed the trial judge's decision for abuse of discretion, finding none.

We granted *certiorari,* and Petitioner presented the following question for our review, which we have summarized and restated:

Did the Court of Special Appeals err in holding that, because meaningful trial proceedings had begun, Rule 4–215(e) did not apply to Petitioner's request to discharge counsel? [1]

We shall hold that the Court of Special Appeals correctly held that meaningful trial proceedings had begun and that Rule 4–215(e) did not apply to Petitioner's request to discharge his counsel. Therefore, the Court of Special Appeals properly reviewed whether the trial judge had abused his discretion.

---

1. Petitioner's phrasing of the question presented was as follows:

Did the Court of Special Appeals err in holding that because "meaningful trial proceedings had begun," Rule 4–215 did not apply to the Petitioner's request to discharge counsel, even though the Petitioner had announced, as the venire entered the courtroom, "Your honor, I'd like to represent myself," and the trial judge deferred consideration of the Petitioner's request until the completion of the roll call of the jurors?

## Statement of Facts and Legal Proceedings

Beginning September 30, 2009, Petitioner was tried in the Circuit Court for Allegany County on assault charges,[2] stemming from an incident in which he threw feces onto three correctional officers at the Western Correctional Institute in Cresaptown. That morning, before the venire panel was called to the courtroom, the court dealt with several preliminary matters, including: a motion to sequester witnesses; Petitioner's withdrawal of a not criminally responsible plea; whether Petitioner was competent to stand trial; Petitioner's rights and responsibilities during trial; and Petitioner's decision to wear prison clothing instead of a jacket and tie.

Afterward, the venire panel was summoned to the courtroom. The trial judge began to address the venire panel but was interrupted, as indicated by the following exchange:

THE COURT: ... All right. Good morning ah, ladies and gentlemen of the jury. My name is ...

MARSHALL: Your Honor I'd like to represent myself.

THE COURT: All right. Would you let me finish talking with the jury and then we'll discuss that with you[,] Mr. Marshall. Is that acceptable to you? Please be seated and we'll see if that is acceptable to you. Please be seated.

The judge then addressed the venire panel:

Good morning, ladies and gentlemen of the jury. This is a criminal case that we are going to be involved with selection today. This is the case of the State of Maryland vs. Gregory Marshall. The first thing I'm going to do is go through what's called voir dire, questions of you to assist the defendant and the State and the Court in selecting a fair and impartial jury. There might well be preliminary matters that I'll then deal with afterwards, Mr. Marshall's request, State's request. We're going to do those in a

---

2. Petitioner was charged with three counts of maliciously causing an employee of a State correctional facility to come into contact with bodily substances, three counts of second-degree assault, and three counts of second-degree assault of a correctional employee.

sequence and in an order. So at this juncture what I'd like you to do is the Clerk's going to take the roll. She's going to call your number and when you hear your number if you'd simply say here and raise your hand, that'll be appreciated. Then the Clerk will swear you to your voir dire. You'll be asked to stand and accept an oath to answer the questions that I'll pose to you.

The clerk took roll of the venire panel and swore them in. The trial judge then had them leave the courtroom:

THE COURT: ... [A]t this point in time ladies and gentlemen ah, again, welcome and thank you for being here. Ah, at this point in time I need to hear from the defendant on a request that he wishes to make. It occurs to me that it's appropriate that such be heard out of your presence. So ah, at this juncture I'm going to, with apologies, ask you to return upstairs until I can hear and deal with whatever preliminary matters might now exist and then we'll bring you back to the courtroom ah, as quickly as we can. Now that you've been sworn to voir dire, that's the phase which we'll pick up at that point in time. So Mr. Bailiff if you'll now take the jury back upstairs, I'll appreciate that.

Once the panel had departed, the judge recognized what Petitioner had said about firing his attorney and read to him Maryland Rule 4–215(e), which states:

**Discharge of Counsel—Waiver.** If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the

defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

Maryland Rule 4–215(e). The judge explained that subsections (a)(1)-(4) of that rule relate "to reviewing the docket to make sure [Petitioner was] formally and properly advised of [his] rights to counsel."[3] Having read the rule, the judge asked Petitioner to clarify his request:

> THE COURT: That is the operative rule under which I function[,] Mr. Marshall. If now you want to indicate whether or not you are asking that your attorney be discharged and if so, I now give you the opportunity to ah, give whatever reason or rationale as you wish or not. I couldn't really tell from what you were saying with the jury what your intentions were. So with that in mind, what do you want to tell me?
>
> MARSHALL: I want to represent myself[,] Your Honor. I'm not being represented and I want to represent myself.

Petitioner said he thought his attorney's performance was deficient for several reasons. He claimed his attorney failed to talk to any favorable witnesses and had not made any attempt to dismiss the case for lack of physical evidence against him. Petitioner insisted that any statements he made

---

3. Maryland Rule 4–215(a) reads:

   (a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

   (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

   (2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

   (3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

   (4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

should have been suppressed, that he was not properly booked after the incident, and that his attorney wanted him to have a jury trial despite his wishes. He also argued that the incident with the correctional officers was racially motivated and that his attorney did not consider that with him. Petitioner concluded by saying his attorney did not have any of Petitioner's "viewpoints" on how Petitioner wanted to proceed with the case, and Petitioner affirmed his desire to represent himself.

The judge then advised Marshall of the charges he faced and the maximum penalties, concluding:

THE COURT: [M]y job and function among other things is to advise you of those maximum penalties that you are facing in this case. Ah, does that information in any fashion change your desire that you're expressing to me at this point or not? I just need to make certain that you're aware of the maximum penalties[.]

Petitioner stated that he would not change his mind. The judge heard from Petitioner's attorney and the prosecutor about the request. His attorney said Petitioner had been generally uncooperative and uncommunicative before trial. The prosecutor indicated Petitioner's attorney was responsive and had filed appropriate motions.

The trial judge deemed Rule 4–215 applicable and discussed the actions of Petitioner's attorney. The judge mentioned that Petitioner's attorney had: filed appropriate discovery requests; raised the issue of Petitioner's competency to stand trial; secured an independent evaluation of Petitioner's competency; proposed jury instructions and voir dire questions; and arranged for Petitioner to wear civilian clothes at trial—which Petitioner ultimately did not do. The judge concluded:

THE COURT: [B]efore I cross one direction or another I want to let you know this, what I have tried to do is set forth on the record and set forth for everyone's understanding why I believe your motion to discharge your attorney today, the morning of trial, is not meritorious.

\* \* \*

As I read the rule to you earlier, having reached that conclusion, if you determine to desire to persist in your desire to discharge your attorney, then as I understand the rule I have no latitude other than to say okay that is being done, but without meritorious reason. So I will now again repeat to you, if the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. You do not have new counsel here today. I do not intend necessarily to continue this matter. So I'm advising you sir, if you now tell me after I've made these various findings it is still my desire to discharge my attorney knowing that we will proceed to trial, knowing that you will proceed without the aid of an experienced attorney on very serious charges with substantial sentences, then that will be accorded you. The attorney will leave with my appreciation for his patience and efforts and we will conduct a trial here today. You will still have a fair trial as best we can perform it for you, but you will not have the aid of your attorney. With all that in mind, simple statement, is it your desire, does it remain your desire to discharge your attorney at this point in time?

MARSHALL: Yes.

THE COURT: Thank you very much. Mr. Harvey, your appearance is noted as having been stricken.

With the judge's permission, when defense counsel exited the courtroom, he left his trial notebook, a notepad, and a pen for Petitioner to use.

The trial proceeded, and Petitioner was eventually convicted of three counts of maliciously causing an employee of a State correctional facility to come into contact with bodily substances.[4] Petitioner timely appealed to the Court of Special Appeals, arguing that the trial court did not properly comply

---

4. The jury was instructed not to consider the assault charges if it found the defendant guilty of the bodily substances charges.

with Rule 4–215 when it permitted him to discharge his counsel.[5] Petitioner argued that the trial court failed to ascertain that he had received a copy of the charging document; failed to inform him of the importance of the assistance of counsel; and failed to determine whether his decision to represent himself was knowing and voluntary.

The intermediate appellate court held that Rule 4–215 did not apply to Petitioner because "meaningful trial proceedings" had begun when Petitioner stated his intention to represent himself. Because Rule 4–215 did not apply, the Court of Special Appeals looked to *State v. Brown,* 342 Md. 404, 676 A.2d 513 (1996) and held that the trial judge was "only required to allow Marshall an opportunity to give his reasons for wanting to discharge counsel and to rule on that request." The intermediate appellate court cited *Brown* for the following criteria, which guide a trial court in deciding whether to allow a defendant to dismiss counsel:

> (1) the merit of the reason for discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel.

*Brown,* 342 Md. at 428, 676 A.2d at 525. From there, the Court of Special Appeals considered the first two factors relevant, disregarded the others as irrelevant, and concluded that the trial court had not abused its discretion in granting Petitioner's request to discharge counsel and allowing him to proceed pro se.

Petitioner appealed to this Court, and we granted *certiorari* on December 16, 2011. *See Marshall v. State,* 424 Md. 54, 33 A.3d 981 (2011).

---

5. Petitioner appealed on five other issues, but none of those are before us.

## Discussion

In holding that "meaningful trial proceedings" had begun, the Court of Special Appeals relied on our decision in *State v. Hardy*, 415 Md. 612, 4 A.3d 908 (2010). In that case, we had occasion to explain the application of Rule 4-215(e):

> When applicable, Rule 4-215(e) demands strict compliance. "The provisions of the rule are mandatory" and a trial court's departure from them constitutes reversible error. Where a motion to discharge counsel is made during trial, however, Rule 4-215(e) does not apply, and we evaluate the trial court's ruling on a motion to discharge counsel under the far more lenient abuse of discretion standard.

*Hardy*, 415 Md. at 621, 4 A.3d at 913 (citations omitted). *Hardy* also cited *Brown*, in which we made clear that Rule 4-215 does not apply after "meaningful trial proceedings" have begun. *See Brown*, 342 Md. at 426, 676 A.2d at 524 ("After meaningful trial proceedings have commenced, the decision to permit the defendant to exercise either right must be committed to the sound discretion of the trial court. Once trial begins, therefore, Rule 4-215 no longer governs, although the court must still adhere to constitutional standards.").

In *Brown*, the trial had begun, and the defendant did not attempt to discharge his counsel until the State called its first witness. *Id.* at 410, 676 A.2d at 516. In *Hardy*, we clarified that "meaningful trial proceedings" can occur before the trial itself begins. *See Hardy*, 415 Md. at 627, 4 A.3d at 916 ("[T]he proper resolution of this issue is that 'meaningful trial proceedings' *have* begun when a request to discharge counsel is made during voir dire."). We analyzed the term "meaningful trial proceedings," beginning with its plain meaning:

> First, voir dire is a "meaningful trial proceeding" under the plain meaning of the phrase. There can be no trial without a trier of fact, and there can be no trier of fact in a jury trial without the jury selection process of voir dire. As such, the voir dire process represents a necessary step in any jury trial, and, therefore, with the beginning of voir dire, meaningful trial proceedings must have begun.

*Id.,* 4 A.3d at 916–17. Judge Harrell, writing for the Court, used a functional analysis to draw the line marking the beginning of meaningful trial proceedings:

Second, voir dire is a "meaningful trial proceeding" under the functional definition of the phrase. In situations where Rule 4–215(e) applies, it permits essentially a criminal defendant to discharge defense counsel almost at will. When the process of jury selection begins, however, the soon-to-be members of the jury share the courtroom with the defendant and defense counsel. From this point on, allowing the defendant to change at will his or her representation, as Rule 4–215(e) permits, would risk confusing the prospective jurors, one of the concerns against which *Brown* warns. For example, jurors simply may become confused by seeing the defendant appear with an attorney one moment and without one the next, or, because defense counsel's trial strategy may affect the questions and challenges posed during voir dire, jurors may be confused when a defendant's motion to discharge counsel is granted and defendant embarks on [an] abrupt and apparent change to that strategy.

*Id.,* 4 A.3d at 917. Court administration was relevant to our holding as well:

In addition, allowing such a change to defense counsel after the entire venire panel is summoned to the courtroom poses a considerable risk of disruption to the trial proceedings in that courtroom, to the court's jury assignment system (as it is compelled to work around the court's consideration of the defendant's request), and to the court's administration as a whole.[6]

*Id.*

These dual considerations—to honor the Rule's text, and to avoid the dangers of disruption and jury confusion—led us to our ultimate conclusion:

---

**6.** I wrote separately in *Hardy* but I agreed with the Majority's analysis on the demarcation of when "meaningful trial proceedings" had begun. *See State v. Hardy,* 415 Md. 612, 656, 4 A.3d 908, 934 (2010) (Adkins, J., concurring and dissenting).

> [W]e hold that "meaningful trial proceedings" have begun after a trial court has begun the voir dire process in a criminal trial. As such, Rule 4–215(e) does not apply literally here to the court's consideration of Hardy's motion to dismiss his trial counsel, which was brought after several voir dire questions had been asked.

*Id.* at 628, 4 A.3d at 917. The question now presented is: When does voir dire begin?

The Court of Special Appeals explained where Marshall's request fit in the timeline of events that transpired as the venire panel was brought to the courtroom:

> On the first day of trial in this case, as the jury entered the courtroom, the court acknowledged their presence and said good morning. [Petitioner] addressed the court and said, "Your Honor, I'd like to represent myself." The court did not immediately address his request and allowed the clerk to take attendance. The court then allowed the clerk to swear in the venire. After excusing the jury, the court addressed [Petitioner.]

The Court of Special Appeals then quoted the trial court's reading and explanation of Rule 4–215(e) to Petitioner.[7] From there, the intermediate appellate court used these facts, and our decisions in *Brown* and *Hardy,* to conclude that meaningful trial proceedings had begun and that Rule 4–215 therefore did not apply to Petitioner.

Petitioner argues that this conclusion was erroneous and that meaningful trial proceedings had not begun when Peti-

---

**7.** The Court of Special Appeals stated that Marshall made his request to represent himself "as the jury entered the courtroom." Petitioner, in his brief, agreed with this characterization ("... as the jury filed into the courtroom ..."), but the State, in its brief, disputed it:

> Contrary to [Petitioner's] assertion that his request came as the venire panel was entering the courtroom ... the transcript shows that the request came after the venire panel was summoned to and seated in the courtroom and the circuit court had begun its introductory remarks for the jury selection process.

As we explain below, this distinction is irrelevant, as, under either interpretation, Petitioner's request occurred after the panel was "summoned" to the courtroom.

tioner requested to represent himself. To conclude that meaningful trial proceedings had begun, Petitioner argues that we must

> either draw a bright line rule holding that meaningful voir dire begins when the toe of the first juror crosses the threshold of the [courtroom], or that in the present case meaningful trial proceedings functionally began because the court delayed responding to the question, allowing the jury to observe the [P]etitioner in the courtroom shackled and next to his attorney.

Petitioner argues that, in *Hardy,* this Court "sought to avoid" drawing a bright line rule that marked the beginning of meaningful trial proceedings. In *Hardy,* we recognized that the rule from *Brown* was not a bright line. *See Hardy,* 415 Md. at 624–25, 4 A.3d at 915 ("We refused to draw a bright line definition delimiting the precise moment that marks the beginning of 'meaningful trial proceedings[.]' "). Despite this recognition, we made it clear that once voir dire begins, so have meaningful trial proceedings. *See id.* at 628, 4 A.3d at 917.

Petitioner attempts to distinguish the factual circumstances of *Hardy* from his own. In *Hardy,* the defendant's motion to dismiss his trial counsel "was brought after several voir dire questions had been asked." *See id.* Here, no questions had been posed when Petitioner asked to represent himself. The judge had barely begun to speak to the venire panel—only managing to wish them good morning, unable to even identify himself—when Petitioner interrupted him with his request.

Petitioner continues:

> [T]he standard question[ ] posed when trial counsel is introduced[—]whether [the venire members] knew him or her[—]had not been asked; without this question the jury did not see [Petitioner] as a counseled defendant who curiously lost his lawyer. Instead, the request was made before trial, as the prospective jurors were filing into the courtroom, and the judge deferred consideration of the request until a roll call of the jurors had been completed.

Petitioner thus argues that there was no risk of confusion to the jurors, a risk that underscored our functional analysis in *Hardy*. There is reason to believe, however, that the jury could have "become confused by seeing the defendant appear with an attorney one moment and without one the next[.]" *Hardy*, 415 Md. at 627, 4 A.3d at 917. As the judge was addressing the venire panel, Petitioner was at the defendant's table with his attorney and professed a desire to represent himself. The jury was asked to leave, and upon their return, Petitioner was without counsel. This may have created the sort of confusion we warned about in *Hardy*.

Petitioner's argument also fails to take into account language from *Hardy* in which we described the risk of disruption in allowing a defendant to change counsel "after the entire venire panel is summoned to the courtroom." *Id.* Petitioner does argue that he "raised the issue at a time where an ultimate decision to discharge counsel would not have brought about the confusion envisioned in *Hardy* because [Petitioner's] discharged attorney was not introduced to the jury prior to the request being made, so there was no reason for the jury to question his absence."

Besides confusion, however, Petitioner offers no reason why we should reconsider our functional analysis in *Hardy* and deviate from the inapplicability of Rule 4–215(e) "after the entire venire panel is summoned." Furthermore, it is clear from the record that Petitioner's request did cause a disruption in trial proceedings, as the venire panel had to be dismissed from the courtroom immediately after having been summoned, seated, introduced, and verified by the court clerk.

Alternatively, Petitioner believes a finding that meaningful trial proceedings had begun at the time of his request would "cut perilously close to the fundamental [c]onstitutional right of an accused to represent himself." Petitioner directs our attention to *Brown*, in which we said:

A defendant must have a last clear chance to assert his constitutional right. If there must be a point beyond which the defendant forfeits the unqualified right to defend pro se,

that point should not come before meaningful trial proceedings have commenced. We have not entered the age of "stop-watch jurisprudence."

*Brown,* 342 Md. at 423, 676 A.2d at 522 (quoting *Chapman v. United States,* 553 F.2d 886, 895 (5th Cir.1977)). In other cases, we have recognized the underlying importance of this "last clear chance" principle, which assures the defendant an opportunity to assert his constitutional right to self-representation before meaningful trial proceedings have begun. *See Hardy,* 415 Md. at 625–26 n. 10, 4 A.3d at 916 n. 10; *State v. Campbell,* 385 Md. 616, 633, 870 A.2d 217, 226–27 (2005). This principle is designed to prevent unjustified delays and obstructions in the timely administration of justice. *See Brown,* 342 Md. at 423 n. 9, 676 A.2d at 523 n. 9; *Hardy,* 415 Md. at 625, 4 A.3d at 916.

The State argues, and we agree, that Petitioner had ample opportunity to assert his constitutional right to self-representation before the venire panel entered the courtroom for jury selection. The record reflects that the trial court considered numerous preliminary matters in the morning before voir dire began, including a motion for witness sequestration, Petitioner's withdrawal of his not criminally responsible plea, a finding of Petitioner's competency to stand trial, and Petitioner's decision not to wear civilian clothing during his trial.

Marshall was afforded the opportunity to speak to the court during these preliminary proceedings. When the court considered Petitioner's motion to withdraw his not criminally responsible plea, Petitioner interrupted his attorney and spoke about unrelated matters, which the court indulged for some time before stopping him, going so far as to say he would talk with Petitioner "a bit more" after hearing from Petitioner's attorney. Then, as the court considered Petitioner's decision to wear his prison clothes, the judge asked Petitioner if he wanted to change into a jacket and tie. In response, Petitioner said nothing.

Petitioner argues that his request to represent himself came at "the first opportunity for him to make his wishes known to

the judge," but we are persuaded by the State's argument that Petitioner had ample opportunity to assert his right to represent himself before meaningful trial proceedings had begun. Once the venire panel was summoned to the courtroom, meaningful trial proceedings had begun. As such, the standard of review on appeal is not whether the trial judge complied with the dictates of Rule 4–215(e), but rather, whether the trial judge's action constituted an abuse of discretion.

## Conclusion

We therefore hold that the Court of Special Appeals did not err when it held that meaningful trial proceedings had begun. It also did not err in holding that Rule 4–215(e) did not apply to Petitioner's request to discharge his counsel.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**

BELL, C.J., and GREENE, J., Dissent.

BELL, C.J., dissenting, in which GREENE, J., joins.

The majority holds that "meaningful trial proceedings" have begun whenever a venire panel has been summoned, has entered the courtroom and been addressed, however preliminarily, by the trial judge. Op. at 364–66, 51 A.3d at 641–42 (2012). In this case, after some preliminary matters had been disposed of, a venire panel was summoned to the courtroom. After the panel members entered the courtroom, the trial judge greeted them, but, before he could introduce himself, he was interrupted by the petitioner's request to represent himself. Op. at 366–67, 51 A.3d at 642–43 (2012). Given the insignificance of what occurred in the courtroom before the appellant's request,[1] the logical effect of this holding, as the

---

1. The petitioner's request was not considered by the court immediately after it was made. Rather, the court asked the petitioner, "Would you let me finish talking with the jury and then we'll discuss that with you[?,]" directed the petitioner to "Please be seated" and gave, to the venire panel, a brief overview of the voir dire process and allowed the court clerk to take the roll of the panel, and swear the venire. That

majority recognizes, *id.* at 374 n. 7, 376, 51 A.3d at 647 n. 7, 648–49 is to preclude the invocation of a Rule 4–215 request after the venire has been summoned. In so doing, it continues on the path it took in *State v. Hardy*, 415 Md. 612, 624–25, 4 A.3d 908, 915 (2010) and has deviated further from the teachings of *State v. Brown*, 342 Md. 404, 676 A.2d 513 (1996).

In *Brown*, this Court recognized that there is a limitation on when a request to discharge counsel or to proceed *pro se* pursuant to Rule 4–215 must be made, defining it as being before "meaningful trial proceedings" begin. 342 Md. at 426, 676 A.2d at 524. We declined to define or establish a precise moment in time when that occurs, preferring to leave that determination to be made on a case-by-case basis. *See id.* at 423, 676 A.2d at 522–23 (refusing to adopt "an inflexible rule of *per se* untimeliness"). There, the request to discharge counsel was made by the defendant during trial, *id.* at 410, 676 A.2d at 516, before the State had "completed the examination of its first witness." *Id.* The Court held: "Rule 4–215 applies up to and including the beginning of trial, but not after meaningful trial proceedings have begun," *id.* at 428, 676 A.2d at 525, and, since trial had begun in that case, the Rule did not apply. *Id.* at 428, 676 A.2d at 525.

In *Hardy*, a divided Court misapplied the *Brown* holding and began the erosion of defendants' rights to counsel and to represent themselves *pro se* that today's decision continues. There, the defendant's request to discharge counsel was made during the voir dire proceedings, after a few questions, 4 or 5, had been asked. *Hardy*, 415 Md. at 634, 4 A.3d at 921. Despite the fact that voir dire is a pre-trial proceeding, unlike

concluded, the venire panel was excused. Only then was the petitioner's discharge request addressed. By then, of course, the jury had been sworn and, so, arguably, so too had voir dire begun. When the court decided to address the request does not, and I submit should not, define when the request was made. Nor should it prejudice the petitioner's position. As we shall see, the considerations upon which the majority's holding depends do just that. Interestingly, and curiously, the trial court did not appear to believe that the request was untimely, that "meaningful trial proceedings" had begun.

examination of a witness during trial, and the concerns addressed, and warned against, in *Brown*, juror confusion and undue interference with trial, were trial concerns, which also were discussed in that context—it was, after all, a case where the request came after trial had begun—, the majority held that " 'meaningful trial proceedings' have begun after a trial court has begun the voir dire process in a criminal trial." [2]  *Id.* at 627, 4 A.3d at 916–917.

As indicated, the majority in this case, continues along the path forged by *Hardy*, only further deviating from *Brown* and further and more blatantly undermining the right to counsel

---

2. In *Brown*, this Court identified the three alternatives for determining when a defendant's request to proceed *pro se* is untimely:

"Courts differ on the exact point in time when the right to discharge counsel is curtailed.  Some courts have held, for example, that requests to proceed pro se are *per se* untimely if asserted after the jury has been selected.  Other jurisdictions have established impanelment of the jury as the 'cut-off' point.  Still others have held that requests are untimely if asserted after 'meaningful trial proceedings have commenced.'  We agree with the view expressed by the United States Court of Appeals for the Fifth Circuit in *Chapman v. United States*, 553 F.2d 886 (5th Cir.1977), that: 'A defendant must have a last clear chance to assert his constitutional right.  If there must be a point beyond which the defendant forfeits the unqualified right to defend pro se, that point should not come before meaningful trial proceedings have commenced.  We have not entered the age of stopwatch jurisprudence.'

Thus we believe the better approach is to assess whether 'meaningful trial proceedings have commenced,' rather than adopting an inflexible rule of *per se* untimeliness."

342 Md. at 422–23, 676 A.2d at 522–23.  (Internal citations and quotation marks omitted).

I am resolute in my conclusion that neither *Hardy* nor this case adheres to "the flexible, case-by-case analysis that the Court in *Brown* sought to impose."  In fact, I fear that the combination of this case and Hardy brings us to the place that the Court in *Brown* warned against, 342 Md. at 423, 676 A.2d at 522, where the order of the day is "stopwatch jurisprudence," *id.*, characterized by cutting a defendant's right to self-representation at an arbitrary point in time, unrelated to whether the principles and values underlying our system are furthered thereby.  Setting as the line of demarcation when the venire panel enters the courtroom for jury selection, without regard to, or an examination of, whether there is, or could be, an actualized risk of juror confusion and bias based on the unique factual events of the case is a good example.

and self representation, rights which this Court recognizes are implicated by Rule 4–215. *Brown*, 342 Md. at 412–13, 676 A.2d at 517 ("A defendant's request to dismiss [ ] counsel implicates two rights that are fundamental to our system of criminal justice: the defendant's right to counsel, and the defendant's right to self-representation."); *Faretta v. California*, 422 U.S. 806, 817, 95 S.Ct. 2525, 2532, 45 L.Ed.2d 562, 571 (1975) ("[I]mplicit also in the Sixth Amendment's guarantee of a right to the assistance of counsel, is 'the right of the accused personally to manage and conduct his own defense in a criminal case.' ") (quoting *United States v. Plattner*, 330 F.2d 271, 274 (2d Cir.1964)). It thus establishes yet another, more restrictive "bright line." To be sure, the majority, in *Hardy*, 415 Md. at 627, 4 A.3d at 917, expressed concern about allowing the defense counsel to be discharged "after the entire venire panel is summoned to the courtroom [because it] poses a considerable risk of disruption to the trial proceedings in that courtroom, to the court's jury assignment system (as it is compelled to work around the court's consideration of the defendant's request), and to the court's administration as a whole." I did not interpret that comment then, nor do I now, as indicating that the "start of voir dire," which its holding identified as the critical point, was synonymous with the summoning of the venire.

I dissent. The petitioner made his request to proceed *pro se* before any trial proceedings began, never mind "meaningful" ones. I set forth my reasons extensively in my dissent to the *Hardy* decision. I stand by that dissent and adopt it for purposes of this dissent, with a few additions and embellishments.

This case presents a significantly different factual scenario from that addressed in *Hardy*. Here, the petitioner's request to discharge counsel was made after the venire panel had been summoned and entered the courtroom and after the trial judge had begun introductory remarks, but before the panel had been oriented by reference to the facts of the case and parties and before the panel had been sworn. Thus, when the petitioner's request was made, the venire panel had no knowl-

edge of the case or the parties and, because it had not been sworn, no questions had been posed to it. The majority concludes, nevertheless, that voir dire, and thus, "meaningful trial proceedings had begun." *Marshall,* 428 Md. at 377–78, 51 A.3d at 649. That simply is not so. In fact, such a conclusion strains, if not overwhelms, logic and common sense. Summoning the potential fact-finders for duty, to participate in the voir dire process, well may be a proceeding, or a part of a proceeding, but their mere appearance at the assigned time and place does not make it a "meaningful proceeding."

The majority adopts the *Hardy* plain meaning rationale that "the voir dire process represents a necessary step in any jury trial, and, therefore, with the beginning of voir dire, meaningful trial proceedings must have begun." *Marshall,* 428 Md. at 372, 51 A.3d at 646 (quoting *Hardy,* 415 Md. at 627, 4 A.3d at 916–17). I respond, as I did in *Hardy,* by pointing out that a "necessary step" in a jury trial rationale is too general to be meaningful or helpful as an analytical tool. 415 Md. at 643–44, 4 A.3d at 926–27. Under such a rationale, an offender's arraignment, request for a jury trial, discovery hearings, the court's setting of a trial date on its calendar, and/or any other necessary processes that are, or may be, prerequisite to a jury trial, under a plain meaning analysis, would be "meaningful trial proceedings." Of course, our case law categorically excludes initial appearances and suppression hearings, pre-trial stages of trial, from the category of "meaningful trial proceedings." *Hardy,* 415 Md. at 625, 4 A.3d at 915 (citing *Joseph v. State,* 190 Md.App. 275, 288, 988 A.2d 545, 553 (2010); *Hawkins v. State,* 130 Md.App. 679, 688, 747 A.2d 759, 764 (2000); *Gonzales v. State,* 408 Md. 515, 537, 970 A.2d 908, 921 (2009)).

Moreover, a plain meaning analysis must, at the very least, reference, take account of, and be consistent with, the commonly understood or, if applicable, technical meaning of the terms used. Black's Law Dictionary, also terming it "voir dire exam" and "examination on the voir dire," defines "voir dire" as:

"1.  A preliminary examination of a prospective juror by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury. 2. A preliminary examination to test the competence of a witness or evidence. 3. *Hist.* An oath administered to a witness requiring that witness to answer truthfully in response to questions."

Black's Law Dictionary 1569 (7th Ed.1999).

While the historical, now obsolete, definition of "voir dire" was a witness' swearing-in, the generally understood, which also is the legally technical, definition of voir dire is the *questioning* or *examination* into the character and possible biases [3] of prospective jurors to determine their competence to serve as jurors.   In that regard, this Court has defined voir dire as "the process by which prospective jurors are examined to determine whether cause for disqualification exists." *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819, 823 (2000) (citing *Boyd v. State,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996)).   According to this Court's definition of voir dire, the process cannot be said to have begun prior to the first question being asked and, it certainly cannot have begun if the members of the venire panel have not yet been sworn to answer questions truthfully. Voir dire, in point of fact, does not begin before a single question is posed and cannot consist merely of venirepersons filing into a courtroom.

It is true that when the petitioner's request to proceed *pro se* was considered and decided, the venire panel had been oriented to some degree, had heard the court's opening remarks, been accounted for and sworn.   That was not the petitioner's doing, however.   He did not wait for these communications and processes to take place; rather, he made his request timely, before any of these things had occurred and it was the court who chose the timing for considering the

---

**3.**  Of course, the legal definition also defines "voir dire" as a preliminary proceeding.   That is consistent with my *Hardy* dissent, in which I pointed out that "voir dire does not take place 'throughout trial[' and] is a pre-trial proceeding[,]" concluding that it is categorically and necessarily excluded from the definition of "meaningful trial proceedings," *see Hardy,* 415 Md. at 641, 4 A.3d at 925.

request. Had the court addressed the petitioner's request when it was made, there would have been no interaction whatsoever between the potential jurors and the parties, State and defendant, and very little—the court did not even succeed in introducing itself before the request came—between the potential jurors and the court. The majority is wrong in holding that "meaningful trial proceedings" had begun based on its holding in *Hardy*.

Voir dire had not begun when the petitioner made his request. And the petitioner should not be prejudiced by the court's choice, because, for its convenience or other reasons, it chose to postpone consideration of the petitioner's request until it had "finish[ed] talking with the jury." [4] That is precisely what the majority does, however, speculating:

> "Petitioner thus argues that there was no risk of confusion to the jurors, a risk that underscored our functional analysis in *Hardy*. There is reason to believe, however, that the jury could have 'become confused by seeing the defendant appear with an attorney one moment and without one the next[.]' *Hardy*, 415 Md. at 627, 4 A.3d at 917. As the judge was addressing the venire panel, Petitioner was at the defendant's table with his attorney and professed a desire to represent himself. The jury was asked to leave, and upon their return, Petitioner was without counsel. This may have created the sort of confusion we warned about in *Hardy*."

*Marshall*, 428 Md. at 376, 51 A.3d at 648. Implicit in the majority's rejoinder is consideration of what occurred subsequent to the request and before discharge, the process of orienting and ultimately swearing the jury.

This Court has functionally defined "meaningful trial proceedings" as the time when allowing the defendant to discharge counsel would pose a risk of disruption of trial procedure or confusion of the jury. *Marshall*, 428 Md. at 372–74, 51 A.3d at 646–47 (citing *Hardy*, 415 Md. at 627, 4 A.3d at

---

**4.** Clearly, the trial judge was referring to the venire and not the jury; the jury was not empaneled until some time later, after the petitioner's counsel had been discharged and voir dire conducted.

917). Using that definition, the majority holds that the functional concerns that existed in *Brown* exist here. The majority is wrong. There can be no juror confusion when there is no jury. At the time the petitioner's request was made, there was no jury, just venirepersons. Moreover, in this case, when the request was made, there had been no interaction between the parties, their counsel and the jury. Furthermore, the venirepersons were never addressed by counsel, so there was no risk of confusion due to a change in trial strategies. As I stated previously in *Hardy*, "[a] defendant's access to effective counsel should not depend on, or take a backseat to, the potential—we have no idea whether, in fact, it will ever become reality—confusion of venirepersons, who may never hear his or her case, or any case, for that matter."[5]   415 Md. at 642, 4 A.3d at 926. The majority has identified and imposed a solution in search of a risk, one that may or may not exist or, if it does, may never come to realization. This prejudices a defendant more than would be the case were he seen by jurors, while still members of the venire, with counsel, before, later, being allowed to represent himself.[6]

---

**5.** The majority observes, in response to the argument by the petitioner that no trial disruption would occur:

> "Furthermore, it is clear from the record that Petitioner's request did cause a disruption in trial proceedings, as the venire panel had to be dismissed from the courtroom immediately after having been summoned, seated, introduced, and verified by the court clerk."

*Marshall v. State*, 428 Md. at 376, 51 A.3d at 649. Aside from the fact that the jurors were not excused immediately, this is not the kind of trial disruption to which the *Brown* opinion, on which *Hardy* heavily relied, had in mind. In *Brown*, we held that "Rule 4–215 applies up to and *including the beginning of trial*, but not after meaningful trial proceedings have begun." 342 Md. at 428, 676 A.2d at 525 (emphasis added). By so holding, we sought to prevent the kind of disruption or confusion that would occur at trial. That a venire panel has to be excused or its examination postponed is not the same kind or degree of interruption that the Court warned against in *Brown*.

**6.** It is also important to note that the petitioner's counsel was not introduced to the venire panel prior to the request. The majority is thus simply speculating when it suggests the possibility that the venire panel would know or conclude that the man standing near the petition-

Lastly, there is no reason to believe that the petitioner made his request to discharge counsel in order to obstruct or delay the case. And I am far from convinced with regard to the majority's rejection of the petitioner's " 'last clear chance' principle" argument, recognized in *Brown*. *Marshall*, 428 Md. at 376–77, 51 A.3d at 649 (citing *Brown*, 342 Md. at 423, 676 A.2d at 522). Although this is an important principle, it is not a bright-line test as the majority makes it out to be.

I dissent.

Judge GREENE has authorized me to state that he joins in this dissenting opinion.

---

er was the petitioner's counsel, and, therefore, would be confused when they re-entered the room and saw that the man was gone.