*Kim Hargett v. State of Maryland*
No. 1809, Sept. Term 2019
Opinion by Shaw Geter, J.

**Criminal Law > Pretrial Procedures > Request to Discharge Counsel**

Meaningful trial proceedings had not commenced on the day of trial when the trial judge summoned the venire panel to the courtroom, but they had not arrived or entered the courtroom to begin jury selection when the defendant made a request to discharge counsel, making the procedural requirements of Md. Rule 4-215 mandatory.

**Criminal Law > Pretrial Procedures > Request to Discharge Counsel**

In assessing a defendant's request to discharge counsel, the trial judge should consider the following factors: (1) the merit of the reason for discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel.

**Criminal Law > Pretrial Procedures > Request to Discharge Counsel**

Trial judge strictly complied with the mandatory requirements of Md. Rule 4-215 when he gave the defendant an opportunity to explain his reasons for wanting to discharge his attorney, implicitly found that the reasons lacked merit, and instructed the defendant that if he discharged his attorney, he would have to represent himself at trial beginning that day.

Circuit Court for Baltimore City
Case No. 509015028

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1809

September Term, 2019
_____

KIM HARGETT

v.

STATE OF MARYLAND
_____

Shaw Geter,
Reed,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Shaw Geter, J.
_____

Filed: November 19, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In 2009, Kim Hargett, appellant, was convicted by a jury sitting in the Circuit Court for Baltimore City of robbery, attempting to obstruct justice, and suborning perjury.[1] The circuit court imposed a sentence of 25 years without the possibility of parole for robbery and concurrent sentences of five and ten years, respectively, for attempting to obstruct justice and suborning perjury. Appellant's convictions were affirmed on direct appeal. *Kim Lee Hargett v. State*, No. 1479, Sept. Term 2009 (filed Dec. 20, 2010), *cert. denied*, 418 Md. 587 (2011) ("*Hargett I*").

In 2019, the circuit court granted appellant's petition for post-conviction relief, permitting him to file a belated second direct appeal to raise a claim that had been omitted from his first direct appeal due to ineffective assistance of counsel. In this appeal, appellant asks one question, which we have rephrased as:

> Did the circuit court err or abuse its discretion by denying appellant's request to discharge counsel on the first day of trial, prior to the commencement of jury selection?

For the following reasons, we answer that question in the negative and shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

The underlying facts pertaining to the charges against appellant are largely irrelevant to the sole issue on appeal and were fully set out in this Court's prior unreported opinion in the first direct appeal. Briefly, the charges against appellant arose from the robbery of an 84-year old man, Dr. Wilbur E. Favor, in East Baltimore. *Hargett I* at 1.

---

[1] Appellant was acquitted of one count of robbery with a deadly weapon.

Appellant accosted Dr. Favor as he got out of his car and stole his wallet. *Id*. at 1–2. The police arrested appellant the next day near Security Square Mall after he attempted to use Dr. Favor's credit card to make a purchase. *Id.* at 2–4. Appellant gave a statement to the police in which he claimed he had found Dr. Favor's wallet on Fayette Street when he was transferring between busses. *Id.* at 4–5. After Dr. Favor had identified appellant as his assailant from a photographic array and at a pre-trial hearing, he received a phone call from an unknown woman who told him he had "made a mistake" and that there were men who were friends with appellant who wanted to "'persuade [Dr. Favor] that [he] made a mistake.'" *Id.* at 5. Appellant's friend, Violet Williams, later testified at trial that she had called Dr. Favor, at appellant's request, and that appellant had directed her to ignore court summonses and to lie about where appellant told her he found the credit cards, which was different from what he told the police. *Id*. at 7.

Appellant, who was represented by an attorney from the Office of the Public Defender, appeared for a pretrial motion hearing on June 2, 2009. At the end of the hearing, the trial judge stated that jury selection would begin the next afternoon, at 2 p.m. Appellant attempted to speak to the court a minute later, saying, "Your Honor." The trial judge told him that he had a lawyer and to speak to his lawyer, not to the court. The proceedings then adjourned for the night.

The next afternoon, at 2:19 p.m., the parties appeared for trial.[2]  Before the case was called, the trial judge asked someone, in an apparent reference to the venire panel: "So, Santa Claus, when they going to get here?"  The record does not reflect a response.

The State called the case and counsel introduced themselves.  The court asked counsel if they had reviewed "each other's Voir Dire" and they each replied in the affirmative.  At that moment, appellant interjected: "Your Honor, I'm trying to waive my counsel."  The following colloquy ensued:

> THE COURT: You're trying to waive your counsel?
>
> [APPELLANT]: Yes. He's bias and prejudice against me.  It's been going on for 14 months and I have reason.
>
> [DEFENSE COUNSEL]: It's not true.
>
> [APPELLANT]: Excuse me.  And I have reasons.
>
> THE COURT: Mr. Hargett.  All right.  Let me make sure you understand what you're doing. Swear in, please.

After appellant had been sworn, the court inquired as to his age, his education level, his mental health, and whether he was under the influence of drugs or alcohol.  The court then advised appellant about the charges against him and the maximum penalties that could be imposed on some of the charges.  The court further advised appellant about the assistance an attorney could provide at trial, including determining whether to elect a bench

---

[2] The portion of the transcript that preceded the start of *voir dire* was not included in the transcripts prepared for appellant's first direct appeal.  Consequently, appellant's request to discharge his counsel was not apparent from the record and his attorney did not raise the propriety of the denial of that request in *Hargett I*.  This was the basis upon which post-conviction relief was granted, resulting in the instant appeal.

trial or a trial by jury; assisting with the selection of a jury; objecting to inadmissible evidence at trial; advising appellant as to whether to testify in his case; and deciding whether and whom to call as witnesses in his defense.

The trial judge explained that he could not "force [appellant] to have a lawyer but I think Shakespeare is right when he says, anybody who represents themselves has a fool for a client." If appellant "insist[ed]" on discharging his counsel, the court emphasized that his "case would not be postponed" and appellant would "have to pick the jury on [his] own . . . [and] represent [himself] in trial." After confirming that appellant understood, the court inquired "And what is your pleasure?" The following ensued:

> [APPELLANT]: Your Honor, my pleasure is to try to seek another counsel, cause as I just said –
>
> THE COURT: It's not going to be postponed. When you come through that door, my job is to try the case, so it's not going to be postponed for you to seek other counsel. And I can tell you, after being a judge 24 years, the Office of the Public Defender is not going to appoint any other counsel for you.
> So, unless you've got a lawyer who's prepared to walk through that [door] *before that jury gets here*, your choices are to let [defense counsel] represent you or represent yourself.
>
> [APPELLANT]: I can't tell you my – a situation where I think it's best to seek another counsel?
>
> THE COURT: Nope. Because that's attorney/client privilege and I don't –
>
> [APPELLANT]: That's what's been broken, Your Honor. That's what's been broken. That's what's I'm trying to bring to your attention.
>
> THE COURT: All right. I'm listening.

(Emphasis added.)

Appellant then explained that four months earlier, in February 2009, defense counsel had met with Dr. Favor's private attorney and "spoke to him personally about [appellant's] case." After appellant learned of this meeting, he expressed to defense counsel that he was unhappy about that decision and wrote to defense counsel's supervisor to complain. The supervisor wrote back to appellant and advised that she was "not going to do anything about it."

The trial judge interjected, inquiring why appellant believed defense counsel's actions were "improper[,]" noting that it would have been "borderline incompetency" if defense counsel had not spoken to "the witnesses on the other side, especially a victim." The court added that if Dr. Favor was represented by counsel, defense counsel was not permitted under the Maryland Attorneys' Rules of Professional Conduct ("MARPC") to speak to him directly without his attorney's knowledge and consent.[3]

Appellant explained that it was his understanding that defense counsel could speak to the Assistant State's Attorney about the case, but not to the victim's private attorney, adding, "I thought the private counsel was something totally different from dealing with the State." The trial judge responded that it was "a courtesy thing and, as well as ethical" for an attorney to ask permission to speak to the client of another attorney. The court added that defense counsel was obligated to investigate on behalf of appellant.

---

[3] MARPC 4.2 states, in pertinent part: "in representing a client, an attorney shall not communicate about the subject of the representation with a person who the attorney knows is represented in the matter by another attorney unless the attorney has the consent of the other attorney or is authorized by law or court order to do so." Md. Rule 19-304.2.

Appellant asked to put on the record that his attorney was "biased and he's prejudice[d] against me." Specifically, he characterized defense counsel's manner towards him as "salty." He explained:

> They got some tapes over at Towson, and on the tapes I was mentioning that if [Dr. Favor] had passed away – he said if [Dr. Favor] passed away, the case would be over with. And I think he heard it as well as the State heard that. And he's been salty against me ever[] since.

The colloquy that followed reflects that the trial judge may have misunderstood appellant to be saying that defense counsel made the remark about Dr. Favor dying:

> THE COURT: If [Dr. Favor] passed – well, that would be a fact.
>
> [APPELLANT]: Yeah, it would be a fact.
>
> THE COURT: If you didn't do it, but let's just say, God forbid, the complaining witness dies and I've had that happen, he's right, the case is over with. Now how does that show bias? That's just a statement of fact. Without a witness –
>
> [DEFENSE COUNSEL]: Your Honor, may I ask a question?
>
> THE COURT: Yes.
>
> [DEFENSE COUNSEL]: Who said that if [Dr. Favor] passed away the case would be over?
>
> [APPELLANT]: (Inaudible)
>
> [DEFENSE COUNSEL]: Who said that?
>
> THE COURT: All I need to know, Mr. Hargett, *the jury is out there*. If I let [defense counsel] out, you go it alone. *But the jury is there*. I just need to know what you want to do, sir?

(Emphasis added.)

After confirming that the preceding discussion had been "on the record," appellant told the court that he would "rather go to bat with a bat than not a bat at all." The court replied, "All right. You all come up while the jury comes in."

After a brief unrelated discussion at the bench, counsel returned to their trial tables and the courtroom clerk asked the trial judge, "Ready for roll call, Your Honor?" The court responded, "Yes" and the courtroom clerk welcomed the venire panel to the courtroom.

After the court conducted voir dire of the venire panel, a jury could not be selected from the remaining prospective jurors and the panel was dismissed.[4] *Hargett I* at 5. The next day, the trial court conducted voir dire of a new venire panel, a jury was selected, and trial commenced.

We will include additional facts in our discussion of the issues.

## DISCUSSION

### a.

Rule 4-215(e) provides:

**Discharge of Counsel -- Waiver**. If a defendant requests permission to discharge an attorney whose appearance has been entered, the court shall permit the defendant to explain the reasons for the request. If the court finds that there is a meritorious reason for the defendant's request, the court shall permit the discharge of counsel; continue the action if necessary; and advise

---

[4] At that juncture, appellant addressed the court, stating that defense counsel was not communicating with him or answering his questions. In *Hargett I*, appellant argued that this exchange amounted to a request to discharge his counsel and that the trial court erred by its handling of the request. *Hargett I* at 8. This Court held that appellant's complaint that defense counsel was not communicating with him was not a request to discharge counsel. *Hargett I* at 10–13.

As mentioned, the earlier request to discharge counsel that is the subject of the instant appeal was not raised in *Hargett I* because it was not included in the transcript of the June 3, 2009 trial proceedings.

the defendant that if new counsel does not enter an appearance by the next scheduled trial date, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds no meritorious reason for the defendant's request, the court may not permit the discharge of counsel without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented by counsel if the defendant discharges counsel and does not have new counsel. If the court permits the defendant to discharge counsel, it shall comply with subsections (a)(1)-(4) of this Rule if the docket or file does not reflect prior compliance.

If a request to discharge counsel is timely, the trial court must strictly comply with the mandates of Rule 4-215(e) in responding to it. *Pinkney v. State*, 427 Md. 77, 87 (2012). "[A] trial court's departure from the requirements of Rule 4-215 constitutes reversible error." *Id.* at 88 (citations omitted). A request is timely if made before "meaningful trial proceedings" have begun. *State v. Brown,* 342 Md. 404, 423 (1996). "After meaningful trial proceedings have commenced, the decision to permit the defendant to [substitute counsel or represent him or herself is] committed to the sound discretion of the trial court." *Id.* at 426.

In the instant case, as a threshold matter, the parties dispute whether appellant's request to discharge his counsel was timely, triggering application of Rule 4-215(e).[5] Two decisions of the Court of Appeals have assessed whether "meaningful trial proceedings" have commenced in relation to jury selection. We discuss each in turn.

In *State v. Hardy*, 415 Md. 612, 617 (2010), the defendant requested to discharge his counsel on the first day of trial, after the venire panel was sworn, and the trial judge had made introductory remarks to the prospective jurors and had asked them several

---

[5] There is no dispute that appellant clearly communicated that he sought to discharge his attorney.

8

questions. On these facts, the Court of Appeals held that "meaningful trial proceedings" had commenced before the request to discharge counsel was made and, thus, that strict compliance with the procedures outlined in Rule 4-215(e) was not required. *Id.* at 622. It further held that the trial court had not abused its discretion by denying the request to discharge counsel. *Id.* In so holding, the Court emphasized that Maryland appellate decisions did not apply a "bright line" rule to determine the timeliness of a request to discharge counsel, but rather analyzed "each situation on a case-by-case basis." *Id.* at 624–25. Prior appellate decisions "establish[ed] clearly that 'meaningful trial proceedings' have *not* begun before voir dire *commences* (at pre-trial hearings and at a defendant's first appearance in court on the morning of his or her trial) and that they *have* begun after voir dire *concludes* (after the State presents evidence and during jury instructions) [.]" *Id.* at 626 (emphasis in original). It was an issue of first impression, however, whether "meaningful trial proceedings" commenced during voir dire. *Id.*

The Court reasoned that voir dire was a "meaningful trial proceeding" under the plain meaning of that phrase and under the "functional" definition. *Id.* at 627. It had defined the phrase "in a functional sense," as the point in time when "allowing the defendant to discharge or substitute his legal counsel would pose a risk either of disruption of trial procedure or of confusing the jury." *Id.* at 625. Under the plain meaning, voir dire was a "meaningful trial proceeding" because a trial was impossible without a trier of fact. *Id.* at 627. Turning to the functional definition, the Court opined:

> In situations where Rule 4-215(e) applies, it permits essentially a criminal defendant to discharge defense counsel almost at will. When the process of jury selection begins, however, the soon-to-be members of the jury share the

courtroom with the defendant and defense counsel. From this point on, allowing the defendant to change at will his or her representation, as Rule 4-215(e) permits, would risk confusing the prospective jurors, one of the concerns against which *Brown* warns. For example, jurors simply may become confused by seeing the defendant appear with an attorney one moment and without one the next, or, because defense counsel's trial strategy may affect the questions and challenges posed during voir dire, jurors may be confused when a defendant's motion to discharge counsel is granted and defendant embarks on abrupt and apparent change to that strategy. In addition, *allowing such a change to defense counsel after the entire venire panel is summoned to the courtroom poses a considerable risk of disruption to the trial proceedings in that courtroom, to the court's jury assignment system (as it is compelled to work around the court's consideration of the defendant's request), and to the court's administration as a whole*.

*Id.* at 627 (emphasis added). Given the potential for disruption and confusion, the Court held that Rule 4-215(e) did not apply to a request to discharge counsel made after the start of voir dire. *Id.* at 628. The circuit court also had not abused its broad discretion by denying the defendant's request to discharge his counsel. *Id.* at 630–31.

Two years later, in *Marshall v. State*, 428 Md. 363, 364–65 (2012), the Court of Appeals considered whether "meaningful trial proceedings" had commenced when a defendant made his motion to discharge counsel after the venire panel had been summoned to the courtroom, but before any questions had been asked of them. The defendant had appeared for trial that morning and, after preliminary matters were addressed, the jury panel arrived in the courtroom. *Id.* at 364. After the trial judge welcomed them, but before the roll call, the defendant interjected and made a request to discharge counsel. *Id.* at 365. The court deferred ruling until after the courtroom clerk took the roll and the jury was dismissed from the courtroom. *Id.* It then heard and granted the defendant's request, permitting him

10

to represent himself at trial. *Id.* He was convicted and noted an appeal arguing, in part, that the trial court failed to strictly comply with Rule 4-215(e). *Id.* at 365.

The appeal reached the Court of Appeals, which affirmed. The Court was guided by the "dual considerations" enunciated in *Hardy*: "to honor the Rule's text, and to avoid the dangers of disruption and jury confusion[.]" *Id.* at 373. It rejected the defendant's argument that because no questions had been asked of the venire panel, *Hardy* did not control the disposition. *Id*. at 375. Rather, the Court reasoned that because the jury panel already had entered the courtroom, had observed the defendant at the trial table with his counsel at one moment and observed him without trial counsel thereafter, the same concern for jury confusion was implicated. *Id.* at 376. Further, the Court emphasized that it was "clear from the record that [the defendant's] request did cause a disruption in trial proceedings, as the venire panel had to be dismissed from the courtroom immediately after having been summoned, seated, introduced, and verified by the court clerk." *Id.*

The defendant also was not deprived of his "last clear chance" to "assert his constitutional right to self-representation" because on the morning that trial began he had "ample opportunity" to make his request while the circuit court considered numerous preliminary matters, including several matters in which the defendant addressed the court. *Id.* at 376–77. The Court held that "[o]nce the venire panel was summoned to the courtroom meaningful trial proceedings had begun." *Id.* at 378.

**b.**

We return to the case at bar. Appellant contends that his request to discharge counsel was "not too late as a matter of Maryland case law," citing *Hardy*. In his view,

11

those cases hold that a request to discharge counsel made by a criminal defendant "at the very outset of his 'first appearance in court on the morning of his . . . trial'" and before voir dire commences is timely. (Quoting *Hardy*, 415 Md. at 626.)

The State counters that "*Marshall* and *Hardy* dictate that [appellant's request to discharge counsel] was not governed by Rule 4-215(e)" because it was not made "until after the prospective jurors had already been summoned to the courtroom[.]" It acknowledges that the holdings in those cases turned, in part, upon the physical presence of the venire panel in the courtroom. The State emphasizes however, that the Court also relied upon "concerns of '[c]ourt administration,' which would be triggered by the summoning of the venire rather than its entry into a courtroom." (Alteration in original.) It argues that the administrative logistics are "not trivial" and include the need to assemble a panel, direct them to the courtroom, and, in this case, escort them from the Mitchell Courthouse to the Elijah E. Cummings Courthouse (formerly known as Courthouse East), located across the street. Finally, the State contends that as in *Marshall*, appellant was not deprived of his "last clear chance" to discharge his counsel given that he was present for a lengthy pre-trial motions hearing the day before.

We agree with appellant that his request to discharge counsel made on the morning of trial and before the venire panel entered the courtroom was timely and, thus, was governed by Rule 4-215(e). As *Hardy* and *Marshall* make clear, the determination of timeliness is to be made on a case-by-case basis. In those cases, the jury panel had been summoned to the courtroom, had entered the courtroom, had been addressed by the trial court, and, in *Hardy*, had been asked several voir dire questions. In the instant case, in

contrast, the jury panel had been called but had not arrived or entered the courtroom when appellant made his request to discharge counsel. Jury confusion was not at issue because the venire panel was not present in the courtroom until after the court had resolved appellant's request to discharge counsel.

Though "disruption of trial procedure" was implicated here, it was not to the same extent as in *Hardy* or *Marshall*. There, the court was obligated to dismiss the jury panel shortly after they entered the courtroom. Further, the State asks us to take judicial notice of the fact that the prospective jurors had to walk across the street to get to the courtroom, which we do. We also recognize, however, that the jury panel that ultimately entered the courtroom shortly after appellant elected not to discharge his counsel later was dismissed and jury selection was started anew the following day. Thus, any disruption occasioned by appellant's last-minute request was in fact inconsequential in this case.

The State further emphasizes that appellant could have made his request to discharge counsel during the pretrial hearing on June 2, 2009. That his request would have been timely if he had made it the day before is clear. Nevertheless, for the reasons already discussed, we conclude that it also was timely when made on his trial date before the jury panel entered the courtroom to commence voir dire.

**c.**

We now turn to whether the trial court complied with Rule 4-215(e) in response to appellant's request to discharge counsel. The Rule establishes a three-step process. *Brown,* 342 Md. at 425. Its procedures are "mandatory," subject to "strict compliance," and a

13

"departure from [those] requirements . . . constitutes reversible error." *Pinkney*, 427 Md. at 87–88 (citations omitted).

First, if a criminal defendant makes a request to discharge counsel, "the court must provide an opportunity for the defendant to explain the reason for dismissal." *Brown*, 342 Md. at 425. Next, the trial court "must evaluate the reason to determine if it is meritorious." *Id.* If the request is found to have merit, the court shall: 1) permit the defendant to discharge his or her counsel; 2) "continue the case if necessary [;]" and 3) advise the defendant that he or she may be required to self-represent if new counsel is not hired by the next scheduled trial date. *Id.* If the court finds no merit in the defendant's asserted reason for dismissal, however, the court "may still permit dismissal of counsel, but only after warning the defendant of the possibility he or she will proceed *pro se* if substitute counsel is not secured." *Id.* Alternatively, the trial court may deny a defendant's request to dismiss counsel if it lacks merit. *Id.*

*1. Opportunity to Explain Reasons*

Appellant contends the trial judge ran "roughshod' over his attempt to explain his reasons for wishing to discharge his counsel because it told him incorrectly that it would be a violation of the attorney-client privilege for him to do so. We conclude that the trial court gave appellant an adequate opportunity to explain the reasons he believed defense counsel was biased and prejudiced against him. After initially shutting down appellant's attempt to explain his reasons, the court told appellant, "All right. I'm listening." Thereafter, appellant was allowed to explain that defense counsel had a conversation with the victim's private counsel that appellant found troubling and that he believed that defense

14

counsel's manner had changed after he heard a recording of appellant telling someone that if Dr. Favor died the case would go away. The trial court did not prevent appellant from fully explaining his reasons. This satisfied the first step of the three-step process.

*2. Evaluation of Merits*

In determining if a defendant's reason for wishing to discharge his or her counsel is meritorious, the "record . . . must '"be sufficient to reflect that the court actually considered th[e] reasons" given by the defendant.'" *State v. Taylor*, 431 Md. 615, 631 (2013) (quoting *Pinkney*, 427 Md. at 93–94, in turn quoting *Moore v. State*, 331 Md. 179, 186 (1993)). If the defendant states "no information that require[s] follow up," the court is not required to inquire further. *Webb v. State*, 144 Md. App. 729, 747 (2002). If the "record reveals the existence of information relevant to the [defendant's] reason[,]" however, and further inquiry is necessary to assess the merit of that reason, then the court must inquire. *Moore*, 331 Md. at 186.

Whether Rule 4-215(e) is implicated or not, the determination of merit is committed to the sound discretion of the trial court. *See Taylor*, 431 Md. at 630 ("Our review of a trial court's denial of a motion based on its 'departure from the requirements of Rule 4-215' . . . is based on an abuse of discretion standard."); *Cousins v. State*, 231 Md. App. 417, 438 (2017). In exercising its discretion, the court is guided by six factors:

> (1) the merit of the reason for the discharge; (2) the quality of counsel's representation prior to the request; (3) the disruptive effect, if any, that discharge would have on the proceedings; (4) the timing of the request; (5) the complexity and stage of the proceedings; and (6) any prior requests by the defendant to discharge counsel.

*Brown*, 342 Md. at 428. These factors may be addressed in a "brief exchange between the court and defendant about the defendant's reasons for requesting dismissal of defense counsel." *Hardy,* 415 Md. at 629. A court abuses its discretion when its decision is "well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *King v. State*, 407 Md. 682, 697 (2009) (quoting *North v. North*, 102 Md. App. 1, 14 (1994)).

In the case at bar, appellant proffered two reasons for seeking to discharge his attorney: 1) a conversation between defense counsel and Dr. Favor's private counsel and 2) defense counsel's allegedly "salty" manner toward him after he heard appellant on a recording discussing the outcome of the case if Dr. Favor died before trial. The trial court implicitly found that neither reason was meritorious. We perceive no error. The appellant did not identify any confidential information communicated to Dr. Favor's attorney by his counsel and defense counsel's supervisor was aware of the complaint and found that it lacked merit. Further, defense counsel's alleged "salty" attitude did not amount to the type of breakdown in communication that might justify discharging counsel on the eve of trial. *See Cousins*, 231 Md. App. at 443 ("[a]ttorney-client conflicts justify the grant of a substitution motion only when counsel and defendant are so at odds as to prevent presentation of an adequate defense.") (citations omitted). This is especially so here, given that defense counsel explicitly denied that he was biased or prejudiced against appellant and was willing and able to continue representing him at the trial.

The timing of appellant's request also weighed against him. Though we have held that it was timely and triggered the procedures outlined in Rule 4-215(e), it was made at

the last possible moment before voir dire commenced. Appellant stated that the issues had been going on for 14 months. The conversation appellant found objectionable occurred several months earlier. Appellant offered no explanation as to why he waited until the morning of trial to raise these concerns with the trial court.

Had the trial court granted appellant's request at that late stage, a continuance would have been necessary and the disruption would have been significant, both for the court and the witnesses scheduled to testify. On this record, the trial court's implicit finding that appellant's reasons for seeking to discharge his trial counsel lacked merit was not an abuse of its broad discretion.

Having found that appellant's reasons lacked merit, the court advised appellant that his case would not be postponed and that, if he chose to discharge his counsel, he would have to represent himself. The court complied with Rule 4-215(e) by so advising appellant. For all these reasons, we affirm.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**